# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097 |

Centralized before the Honorable
Marvin E. Aspen

| | |
|---|---|
| THIS DOCUMENT RELATES TO:<br>*Elliot-Labin, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 1:07-cv-6191 (N.D. Ill.) and *Ferrara, et al. v. Ameriquest Mortgage Co., et al.*, Case No. 1:07-cv-6867 (N.D. Ill.) | |

## MOTION FOR REASSIGNMENT

## I.     INTRODUCTION

Pursuant to Northern District of Illinois Local Rule 40.4(c), Plaintiffs and Defendants[1] hereby seek reassignment of the following actions to this Court for pretrial proceedings along with the other actions in this multidistrict litigation proceeding (the "Proceeding"):

- *Elliot-Labin, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 1:07-cv-6191 (N.D. Ill.) (Kennelly, J.); and
- *Ferrara, et al. v. Ameriquest Mortgage Co., et al.,* Case No. 1:07-cv-6867 (N.D. Ill.) (Kendall, J.)

(the "Actions")[2].

As detailed below, reassignment of the Actions is warranted for two reasons. First, the Actions are "related" under Local Rule 40.4(a) to one or more actions in this Proceeding.  Plaintiffs contend that Defendants violated the Truth-in-Lending Act, 15

---

[1] "Defendants" collectively refers to Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; ACC Capital Holdings Corp.; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; Ameriquest Mortgage Securities, Inc., WM Specialty Mortgage LLC and Deutsche Bank National Trust Company.

[2] True and correct copies of the operative complaints in the Actions are attached hereto as Exhibits 1 and 2.

U.S.C. Section 1601, *et seq.* ("TILA"), by failing to provide them with proper notice of their rescission rights and accurate disclosures of their loan terms. There presently are more than 150 actions in this Proceeding that advance the same allegations, including the Borrowers' Consolidated Class Action Complaint ("Borrowers' Complaint") [Docket No. 325].

Second, all of the conditions for reassignment of the Actions under Local Rule 40.4(b) are satisfied here. That is, the Actions are pending before other judges in this District; the handling of the Actions by this Court will result in a substantial saving of judicial time and effort; the Actions were recently filed and have not progressed to the point where reassignment would be likely to delay the proceedings therein substantially; and these Actions and the actions in this Proceeding are susceptible to disposition in a single proceeding because they have substantial areas of overlap. Accordingly, Plaintiffs and Defendants respectfully request that this Court grant the Motion in its entirety.

Case 1:05-cv-07097    Document 1864    Filed 01/07/2008    Page 2 of 5

## II.    ARGUMENT

To have a case reassigned based on relatedness, the movant must satisfy both Local Rule 40.4(a) and (b). *Donahue v. Elgin Riverboat Resort*, No. 04 C 816, 2004 WL 2495642, at *2 (N.D. Ill. Sept. 28, 2004). This Court has the sound discretion to reassign a case under Local Rule 40.4. *Clark v. Ins. Car Rentals Inc.*, 42 F. Supp. 2d 846, 847 (N.D. Ill. 1999).

Local Rule 40.4(a) provides that cases are "related" if: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law, (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are of the same. Rule 40.4(a) "does not require complete identity of issues in order for cases to be considered related." *Fairbanks Capital Corp. v. Jenkins*, No. 02-C-3930, 2002 WL 31655277, at *2 (N.D. Ill. Nov. 25, 2002). Rather, it is enough that the two cases "involve *some* of the same issues of fact or law." *Lawrence E. Jaffe Pension Plan v. Household Int'l., Inc.*, No. 02-C-5893, 2003 WL 21011757, at *3 (N.D. Ill. May 5, 2003) (emphasis in original).

Once the cases have been found to be related, Local Rule 40.4(b) imposes four additional conditions that must be satisfied before a case may be reassigned: (1) both cases must be pending in the Northern District of Illinois; (2) reassignment must result in

a substantial saving of judicial time and effort; (3) the earlier case must not have progressed to the point where designating the cases as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases must be susceptible of disposition in a single proceeding.  As demonstrated below, reassignment of the Actions satisfies the requirements of Local Rules 40.4(a) and (b), and the Court should grant the Motion.

**A.    The Actions Are Related Under Local Rule 40.4 To Many Actions In This Proceeding, Including The Borrowers' Consolidated Class Action Complaint.**

In the Actions, Plaintiffs allege that Defendants violated TILA by failing to provide them proper notice of their rescission rights and accurate disclosures of their loan terms.  Presently, there are more than 150 actions in this Proceeding that involve allegations that Defendants violated TILA by failing to provide borrowers with proper notice of their rescission rights.  These allegations are also made in the Borrowers' Complaint.  [Borrowers' Complaint, ¶¶ 188-197, 234-244.]  Accordingly, these Actions are "related" to the actions within the meaning of Local Rule 40.4(a).

**B.    All Of The Conditions For Reassignment Of The Actions Under Local Rule 40.4(b) Are Satisfied Here.**

All of the conditions for reassignment of the Actions under Local Rule 40.4(b) are satisfied here.  To begin with, the Actions are pending before other judges in this District.

Furthermore, the handling of the Actions by this Court will result in a substantial saving of judicial time and effort.  Among other things, reassignment of the Actions to this Court will allow one judge to decide whether Defendants violated the same law (TILA) based on similar purported conduct (failing to provide proper notice of rescission rights).  This will avoid the risk of inconsistent rulings and multiple appeals, should several judges rule on this issue.  Indeed, the Seventh Circuit Court of Appeals has criticized judges of this Court for permitting separate lawsuits involving similar claims and the same defendants to proceed along different tracks before different judges, resulting in numerous and disparate decisions, as well as multiple appeals.  *See, e.g., Smith v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 513 (7th Cir. 1999).

Moreover, the Actions were recently filed and have not progressed to the point where designating them related would be likely to delay the proceedings therein.  Finally,

these Actions and the actions presently in this Proceeding are susceptible to disposition in a single proceeding because they all assert similar legal claims under TILA. Accordingly, the Court should reassign the Actions to this Court for pretrial proceedings along with the other actions in the Proceeding.

### III.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court grant the Motion in its entirety.

Respectfully submitted,

DATED: January 7, 2008

By: /s/ Bernard E. LeSage
*Attorneys for Ameriquest Mortgage Company; AMC Mortgage Services, Inc.; Town & Country Credit Corporation; ACC Capital Holdings Corp.; Ameriquest Capital Corporation; Town & Country Title Services, Inc.; Ameriquest Mortgage Securities, Inc., WM Specialty Mortgage LLC and Deutsche Bank National Trust Company*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
(213) 891-0700
(213) 896-0400 (fax)

**CERTIFICATE OF SERVICE**

I, Bernard E. LeSage, hereby certify that on this 7th day of January 2008, a true

and correct copy of the foregoing document was filed electronically. Notice of this filing

will be sent by electronic mail to all counsel of record by operation of the Court's

electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Bernard E. LeSage

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRONWEN ELLIOT-LABIN, | ) | |
| GWEN FAUST, EILEEN RUSSELL, | ) | |
| CLARENCE HOLLAND, | ) | Case No.: 07-cv-6191 |
| RICHARD JANEWAY, LINDA MOSS, | ) | |
| MARCIA NOWIK, PAUL and | ) | |
| WANDA NEWBOLT, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Plaintiffs, | ) | Magistrate Judge Brown |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | JURY TRIAL DEMAND |
| AMERIQUEST MORTGAGE COMPANY, | ) | |
| | ) | |
| AMC MORTGAGE SERVICES, INC., | ) | |
| | ) | |
| AMERIQUEST MORTGAGE SECURITIES, | ) | |
| INC., | ) | |
| | ) | |
| ACC CAPITAL HOLDINDGS, | ) | |
| | ) | |
| DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY, | ) | |
| | ) | |
| AMERICA'S SERVICING COMPANY | ) | |
| | ) | |
| BEAR STEARNS/EMC, | ) | |
| | ) | |
| AMERIQUEST MORTGAGE SECURITIES INC. | ) | |
| ASSET BACKED PASS THRU CERTIFICATES | ) | |
| SERIES 2005-R5, | ) | |
| | ) | |
| AMERIQUEST MORTGAGE SECURITIES INC. | ) | |
| ASSET BACKED PASS THROUGH | ) | |
| CERTIFICATES SERIES 2005-R1, | ) | |
| | ) | |
| WASHINGTON MUTUAL BANK, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

### INTRODUCTION

1.     Plaintiffs charge defendants with failure to honor valid rescission requests in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendants with violation of applicable state law.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under federal law.  This Court has supplemental jurisdiction over plaintiffs' claims under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

### PARTIES

4.     Plaintiffs are home owners who refinanced their mortgages in transactions with Ameriquest Mortgage Company.

5.     Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages.  In connection with those refinancing transactions, Ameriquest Mortgage Company took security interests in plaintiffs' homes.  Ameriquest Mortgage Company also did business in this District.

6.     Defendant AMC Mortgage Services, Inc. at one point serviced plaintiffs' mortgages that were originated by Ameriquest and did business in this District.

7.     Defendant Ameriquest Mortgage Securities, Inc. held legal or beneficial title to mortgage loans originated by Ameriquest at issue in this lawsuit.

8.     Defendant ACC Capital Holdings is the parent company for Ameriquest Mortgage Company and AMC Mortgage Services, Inc.

9.     Defendant Deutsche Bank National Trust Company is the trustee of Ameriquest Mortgage Securities Inc. for the various asset backed pass-through certificates which owns or owns plaintiffs' loans.

10.     Defendant America's Servicing Company currently is the servicer for the Bronwen Elliot-Labin, Gwen Faust and Eileen Russell loans.

11.     Bear Stearns/EMC is the current owner for the Bronwen Elliot-Labin, Gwen Faust and Eileen Russell loans.

12.     Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc. Asset Backed Pass Thru Certificates Series 2005-R5 and/or Ameriquest Mortgage Securities Inc. Asset Backed Pass Thru Certificates Series 2005-R5 is the owner/investor for the Holland loan.

13.     Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc. Asset Backed Pass Through Certificates Series 2005-R1 and/or Ameriquest Mortgage Securities Inc. Asset Backed Pass Through Certificates Series 2005-R1 is the owner/investor for the Janeway loan.

14.     Defendant Washington Mutual is the current owner/investor for the Linda Moss, Marcia Nowik, and Paul & Wanda Newbolt loans.

15.     Plaintiffs are informed and believe that, at all times herein mentioned, each Defendant (except America's Servicing Company, Bear Stearns/EMC and Washington Mutual Bank) was the agent, co-conspirator, joint tortfeasor, joint venturer, and/or alter ego of each other defendant.  In doing the things alleged herein, each defendant was acting within the course and scope of said agency, conspiracy, contract, and/or joint venture with the direction, advance knowledge, authorization, acquiescence, and/or subsequent ratification of each and every remaining defendant.  Each defendant was put in a position and so enabled by the remaining defendant to do the things hereinafter alleged.

Each defendant had the knowledge of and agreed to the objective and course of action hereinafter alleged, and each defendant conspired with and aided and abetted each other defendant in achieving that objective and pursuing that course of action.

16.     Whenever reference is made in this complaint to any act, deed or transaction of any defendant corporation, or any other defendant business entity, such allegations shall be deemed to mean that the officers, directors, agents or employees of said defendant authorized, acted and did such acts in behalf of said defendant while actively engaged in the management, direction or control of its affairs and while acting within the course and scope of their employment.

17.     Whenever reference is made in this complaint to any act of any defendant, such allegation shall be deemed to mean the act of each defendant, acting individually, jointly and severally.

18.     At all times relevant herein, defendants, and each of them, were the agents of each of the other defendants and in doing the things alleged herein were acting within the course and scope of said agency.

## COUNT ONE -- TRUTH IN LENDING ACT

19.     Plaintiffs incorporate paragraphs one through eighteen above.

20.     Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage refinancing transactions did not comply with the requirements of the Truth in Lending Act. More specifically, the disclosures were deficient in the following ways:

### Bronwen Elliot-Labin

21.     First, the Notice of Right to Cancel form made it appear that only Mr. Labin had the right to cancel the mortgage, whereas plaintiff Bronwen Elliot-Labin also had that right.  Second, Ameriquest did not provide the requisite number of copies of the completed Notice of Right to Cancel form.  Third, by misleading plaintiff as to her interest rate and house payments, Ameriquest violated 12 C.F.R. § 226.18.

### Gwen Faust and Eileen Russell

22.     First, Ameriquest falsely assured plaintiffs Gwen Faust and Eileen Russell that their interest rate could only increase once, thereby misleading them as to the nature of the variable interest rate on their loan in violation of 12 C.F.R. § 226.18.  Second, Ameriquest gave Faust and Russell a document entitled **PRE-APPLICATION DISCLOSURE** which stated that they were being charged $200 for an appraisal and that this fee was non-refundable to the extent that appraisal costs were actually incurred.  This statement contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee.  By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).  Third, the settlement statement signed at closing said that Faust and Russell would receive $99,671.04, but in fact plaintiffs only received $79,199.16.  The Notice of Right to Cancel forms given to plaintiffs at the closing said their rescission period expired on April 14, 2005.  This date was based on a consummation date of April 11, 2005, and was incorrect.  Because Ameriquest changed the terms of the deal after the closing -- by not paying plaintiffs as much as promised in the settlement statement -- the transaction was not consummated on April 11, 2005.  Therefore, the rescission period did not expire on April 14, 2005 and it was a violation of 12 C.F.R. § 226.23(b)(1)(v) for Ameriquest to say that it did.  Fourth, Ameriquest paid a prior lender, Wachovia, more than the amount actually owed.  This overpayment should have been classified as a finance charge.  As a result, the finance charge and APR were materially understated.

**Clarence Holland**

23.     Plaintiff Clarence Holland was given a document entitled **APPLICATION DISCLOSURE**, which indicated that he would owe $450 if he backed out of the deal after the Lender ordered the appraisal/property valuation.  This statement was a misrepresentation which violated 12 C.F.R. § 226.23(b)(1)(iv).  Also, Ameriquest misled plaintiff Holland as whether he would be able to refinance into a lower interest fixed rate loan before his interest rate increased, thereby violating 12 C.F.R. § 226.18.

**Richard Janeway**

24.     First, the Notice of Right to Cancel form provided to plaintiff Janeway did not provide the date on which the rescission period ended, a violation of 12 C.F.R. § 226.23(b)(1)(v).  Second, Ameriquest gave plaintiff Janeway two documents, both entitled **APPLICATION DISCLOSURE**, one of which stated that he was being charged $325 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation" and the other of which stated that he was being charged $500 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation."  These statements contradicted plaintiff's right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee.  By representing the appraisal fee was nonrefundable if plaintiff tried to cancel the transaction, Ameriquest misrepresented plaintiff's rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).  Third, plaintiff Janeway received only one Notice of Right to Cancel form, rather than the two forms required by 12 C.F.R. § 226.23(b)(1).  Fourth, Ameriquest misled plaintiff as to the interest rate he would be charged, thereby violating 12 C.F.R. § 226.18.

### Linda Moss

25.     First, Ameriquest did not give plaintiff Moss Notice of Right to Cancel forms. Second, Ameriquest paid a creditor, Litton Loan, more than the amount actually owed to the prior lender, as a result of Ameriquest's practice of including a 3% "padding" adjustment in payoffs to certain lenders.  The overpayment should have been included in the finance charge, rather than in the amount financed.  As a result of this misstatement, the finance charge and APR on the mortgage were materially understated.  Third, plaintiff Moss was given two documents, both entitled **APPLICATION DISCLOSURE**, one of which indicated that she would owe $300 if she backed out of the deal after the Lender ordered the appraisal/property valuation, while the other indicated that she would owe $207 if she backed out of the deal after the Lender ordered the appraisal/property valuation.  Both statements were misrepresentations which violated 12 C.F.R. § 226.23(b)(1)(iv).  Fourth, Ameriquest misled plaintiff Moss as to whether her interest rate was likely to increase, a misrepresentation that violated 12 C.F.R. § 226.18.

### Marcia Nowik

26.     First, the Notice of Right to Cancel forms provided to plaintiff Nowik at the closing did not include the date the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v).  Second, Ameriquest paid a creditor, Centex Home Equity, more than the amount actually owed to the prior lender, as a result of Ameriquest's practice of including a 3% "padding" adjustment in payoffs to certain lenders.  The overpayment should have been included in the finance charge, rather than the amount financed.  As a result of this misstatement, the finance charge and APR on the mortgage were materially understated.  Third, plaintiff Nowik was given a document, entitled **APPLICATION DISCLOSURE**, which indicated that she would owe $200 if she backed out of the deal after the Lender ordered the appraisal/property valuation.  This statement was a misrepresentation which violated 12 C.F.R. § 226.23(b)(1)(iv).  Fourth, Ameriquest misled plaintiff Nowik as to whether her interest rate could increase, a misrepresentation

that violated 12 C.F.R. § 226.18.

### Paul and Wanda Newbolt

27.     First, the Notice of Right to Cancel forms delivered to the Newbolts at the closing left blank the date on which the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, by falsely assuring the Newbolts that they were getting a fixed rate mortgage, Ameriquest misled plaintiffs as to the existence of a variable interest rate on their loan in violation of 12 C.F.R. § 226.18.  Third, by falsely assuring the Newbolts that they would be able to lower their interest rate in two years, Ameriquest misled plaintiffs as to the cost of credit in violation of 12 C.F.R. § 226.18.  Fourth, Ameriquest gave the Newbolts a document entitled **APPLICATION DISCLOSURE** which stated that they were being charged $200 for an appraisal and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation."  This statement contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee.  By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

28.     Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years.  See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

29.     Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent rescission notices to Ameriquest and to the defendants who owned and serviced their respective mortgages.  Defendants did not honor the rescission

requests as required by federal law. Plaintiffs are entitled to rescission of their mortgage transactions plus other relief.

## COUNT TWO
## FALSE ADVERTISING / UNFAIR AND DECEPTIVE ACTS AND PRACTICES

30.     Plaintiffs incorporate paragraphs one through twenty-nine above.

31.     In connection with trade or commerce, Ameriquest engaged in false advertising and engaged in unfair and deceptive acts and practices in violation of State laws (including common law doctrines) which prohibit bait and switch sales practices. More specifically, as detailed below, Ameriquest baited plaintiffs into mortgage transactions by offering relatively favorable terms and then switched to more expensive terms. This misconduct has caused damage to plaintiffs. More specifically:

### Bronwen Elliot-Labin

32.     In or about April 2005, a representative of Ameriquest told plaintiff Bronwen Elliot-Labin of Chico, California, that she would get a mortgage with an interest rate between 5% and 6%, and that she should stop paying her other creditors. Instead of the promised loan, however, plaintiff and her husband received a mortgage with an initial interest rate of 6.250%, which could increase to 12.250%, depending on changes in the LIBOR rate, for which they were assessed unexpectedly high settlement charges of $14,992.15.

### Gwen Faust and Eileen Russell

33.     Plaintiff Gwen Faust is the director for organizational change at Orange Regional Medical Center. Plaintiff Eileen Russell is the assistant deputy superintendent of programs at Great Meadow Correctional Facility. They own a home in South Salem, New York. In 2005, plaintiffs decided to refinance the mortgage on their home. They contacted Ameriquest and spoke repeatedly with a representative of Ameriquest named Janel Adcock. Plaintiffs said that they were only interested in a fixed rate mortgage with

9

no points.  However, after discussions with Ms. Adcock, plaintiffs agreed to a mortgage

that could increase on one occasion, after five years, to 5.75% and could not increase

thereafter. Plaintiffs were told to expect closing costs of about $6,000.  Ameriquest

prepared papers for a loan of $335,000 with an initial interest rate of 5.875% but which,

after five years, could increase every six months to as much as 11.875% depending on

changes in the LIBOR rate.  Ameriquest assessed plaintiffs $17,992.86 in fees and points

in exchange for this loan.  The closing took place on April 11, 2005 at the Ameriquest

office in Tarrytown, New York.  Present were plaintiffs and a closing agent for

Ameriquest.  Plaintiffs asked why the closing costs were so high. Janel Adcock was

called into the room and said she was surprised too. Plaintiffs raised a question about how

often the interest rate on the loan could increase. Ms. Adcock showed plaintiffs a TILA

schedule of payments which appeared to show there would be only one increase in the

monthly payments.  Ms. Adcock told plaintiffs not to worry about apparently contrary

language in the loan papers. Plaintiffs believed Janel Adcock's assurances and signed the

loan papers.

### Clarence Holland

34.    In or about April 2005, plaintiff Clarence Holland spoke on the telephone to an

Ameriquest representative and was assured that he would be able to refinance into a

lower interest fixed rate mortgage before his mortgage interest rate increased two years

later.  However, Ameriquest provided plaintiff with a mortgage with a substantial

prepayment penalty applicable if the mortgage was refinanced within three years.  In

2007, that prepayment penalty prevented plaintiff from consummating a refinancing

transaction.

### Richard Janeway

35.    Plaintiff Richard Janeway is a sales representative in the automotive collision

industry, selling equipment used to repair cars that have been involved in accidents.  Mr.

Janeway owns a home in New Tazewell, Tennessee.   In late 2004, Mr. Janeway decided

to refinance the mortgage on his home.  He spoke repeatedly on the telephone to a representative of Ameriquest.  The Ameriquest representative promised Mr. Janeway a mortgage loan with an interest rate that would be fixed for three years at 6.25% and then would adjust slightly. Mr. Janeway was also told that the loan's prepayment penalty would expire after two years.  Ameriquest prepared documents for a loan of $102,850.00, with a three year prepayment penalty and an initial interest rate of 6.750% which was fixed for two years and could eventually go as high as 12.750%, depending on changes in LIBOR.  Ameriquest assessed plaintiff $6,982.43 in fees and points in exchange for this loan.  The closing took place in December 2004 at the office of a title company in West Knoxville, Tennessee and lasted about twenty minutes.  Plaintiff just glanced at the loan papers and did not notice the discrepancies between what he had been promised and the actual loan terms.

### Linda Moss

36.     Plaintiff Linda Moss owns a home in Zionsville, Indiana, where she lives with her two children.  Ms. Moss works for a bank in Indianapolis.  In 2005, plaintiff decided to refinance the mortgage on her home in order to consolidate debts she had incurred trying to make ends meet following her divorce. In or about August 2005, Ms. Moss spoke repeatedly on the telephone to an Ameriquest representative named Robin Fox.  Ms. Fox promised plaintiff a mortgage and told her that the interest rate on her mortgage loan would be fixed for three years and after that it could up or down depending on what the market is.  Ms. Fox said that, based on current market conditions she thought that after three years plaintiff's payment would probably go down.  However, Ameriquest gave Ms. Moss a mortgage loan with an initial interest rate of 8.250%, which could go up to as high as 14.250%, depending on changes on the LIBOR rate but under no circumstances could go below the initial rate.

### Marcia Nowik

37.     In or about November 2004, plaintiff Marcia Nowik spoke repeatedly on the telephone to an Ameriquest representative named Brian Applegate about refinancing the mortgage on her home in Yellow Springs, Ohio.  Mr. Applegate promised plaintiff a fixed rate mortgage with an interest rate of 6.1%.  Instead, however, Ameriquest provided plaintiff with an adjustable rate loan which could go up to as high as 12.1%, depending on changes on the LIBOR rate.  Ameriquest charged plaintiff $8,358.67 in fees and points for this loan.

### Paul and Wanda Newbolt

38.     Plaintiff Paul Newbolt is a courier for DHL.  His wife, plaintiff Wanda Newbolt, works as a parts tester.  They own a home in Indianapolis, Indiana, where they live with their daughter.  In 2004, the Newbolts decided to refinance the mortgage on their home.  Mr. Newbolt contacted Ameriquest and spoke to a representative who promised a mortgage with an interest rate between 9% and 10%.  The Ameriquest representative gave Mr. Newbolt the impression that the interest rate was fixed.  Mr. Newbolt was told that he would be able to get a lower interest rate in two years if he made timely mortgage payments.  Ameriquest prepared papers for a loan of $128,000 with an initial interest rate of 9.3% but which could increase to as much as 15.3% depending on changes in the LIBOR rate.  There was no cash out for plaintiffs. Ameriquest assessed plaintiffs $5,873.37 in fees and points in exchange for this loan. The closing took place on January 20, 2005 at around 1:00 p.m. at an Ameriquest office in Indianapolis.  The Ameriquest representative who had spoken to Mr. Newbolt on the telephone shook hands with plaintiffs, congratulated them on their mortgage and introduced to a closer.  The closer had plaintiffs sign the loan papers, which they did without reading them.  During the closing, the closer remarked to the Newbolts that their loan was backed by LIBOR, which he (the closer) said was like the European Stock Exchange.  The closer told that the Newbolts that whenever he refinanced his own

12

mortgage he would go with a LIBOR loan.  The closer also reiterated that the Newbolts

would be able to get a lower interest rate in two years if they stayed current on their

mortgage payments.  Around September 2006, the Newbolts began receiving letters from

other mortgage companies, telling them that their mortgage interest rate would adjust

upwards.  At first, Mr. Newbolt did not believe the letters, figuring he was protected

because he had a fixed LIBOR loan.  Eventually, however, he looked at his mortgage

papers and discovered his loan was adjustable.  Mr. Newbolt contacted Ameriquest to see

about refinancing into a fixed rate mortgage.   He was told that he would not be able to

refinance because his house only appraised for $120,000, which is less than the Newbolts

owe on their mortgage.

39.    Ameriquest's false and misleading statements to plaintiffs violated plaintiffs'

rights under applicable state law.

40.    Ameriquest's false and misleading statements deceived plaintiffs and

proximately caused them injury.

41.    The other defendants (except America's Servicing Company, Bear

Stearns/EMC and Washington Mutual Bank) are jointly responsible because Ameriquest

acted as their agent and/or co-conspirator and because the other defendants knowingly

aided, abetted, participated in and/or assisted in the pattern and practice of misconduct.

The other defendants are therefore jointly and severally liable to plaintiffs.

### COUNT THREE
### NEGLIGENCE

42.    Plaintiffs incorporate paragraphs one through forty-one above.

43.    Because of a lack of due care,  Ameriquest made false and misleading

representations to plaintiffs upon which plaintiffs justifiably and detrimentally relied.

More specifically, Ameriquest baited plaintiffs into mortgage transactions by offering

relatively favorable terms and then switched to more expensive terms.  This misconduct

has caused damage to plaintiffs.  The other defendants (except America's Servicing

Company, Bear Stearns/EMC and Washington Mutual Bank) are jointly responsible because Ameriquest was acting as their agent and/or co-venturer.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a. canceling the appropriate defendants' security interests in plaintiffs' homes and ordering those defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b. awarding plaintiffs actual damages that were proximately caused by defendants' (except America's Servicing Company, Bear Stearns/EMC, and Washington Mutual Bank) failure to comply with 12 C.F.R. § 226.23(d)(2);

c. awarding appropriate statutory damages against defendants (except America's Servicing Company, Bear Stearns/EMC, and Washington Mutual Bank);

d. awarding plaintiffs costs, penalties, and attorneys fees;

e. awarding plaintiffs actual and punitive damages against defendants (except America's Servicing Company, Bear Stearns/EMC, and Washington Mutual Bank)

f. granting such other relief as the Court deems just and proper.

Respectfully submitted by:


/s/ Anthony P. Valach, Jr.
Counsel for the Plaintiffs

Daniel Harris, Esq.
Anthony Valach, Esq.
**THE LAW OFFICES OF DANIEL HARRIS**
150 N. Wacker Drive, Suite 3000
Chicago, IL  60606
Phone: (312) 960-1802
Fax: (312) 960-1936
lawofficedh@yahoo.com
anthonyvalach@sbcglobal.net

**FILED**

**DECEMBER 5, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**07 C 6867**

| | | |
|---|---|---|
| SUSAN FERRARA, JOHN KRUGER,<br>GENE MCDONALD, MIRIAM HASKINS,<br>DONALD and WANDA MARTINDELL,<br>ROBERT and MARLIANNA VIGIL,<br><br>       Plaintiffs,<br><br>vs.<br><br>AMERIQUEST MORTGAGE COMPANY, AMC<br>MORTGAGE SERVICES, INC., ACC CAPITAL<br>HOLDINGS, AMERIQUEST MORTGAGE<br>SECURITIES INC., DEUTSCHE BANK NATIONAL<br>TRUST COMPANY, in its own capacity and as Trustee<br>for AMERIQUEST MORTGAGE SECURITIES TRUST<br>2006-R1; AMERIQUEST MORTGAGE SECURITIES<br>INC., ASSET BACKED PASS-THROUGH<br>CERTIFICATES, SERIES 2005-R3; AMERIQUEST<br>MORTGAGE SECURITIES INC., ASSET BACKED<br>PASS-THROUGH CERTIFICATES, SERIES 2005-R2;<br>AMERIQUEST MORTGAGE SECURITIES INC.,<br>ASSET BACKED PASS-THROUGH CERTIFICATES,<br>SERIES 2005-R11; AMERIQUEST MORTGAGE<br>SECURITIES TRUST 2006-R1; AMERIQUEST<br>MORTGAGE SECURITIES INC., ASSET BACKED<br>PASS-THROUGH CERTIFICATES, SERIES 2005-R3;<br>AMERIQUEST MORTGAGE SECURITIES INC.,<br>ASSET BACKED PASS-THROUGH CERTIFICATES,<br>SERIES 2005-R2; AMERIQUEST MORTGAGE<br>SECURITIES INC., ASSET-BACKED PASS-THROUGH<br>CERTIFICATES, SERIES 2005-R11; WASHINGTON<br>MUTUAL BANK; U.S. Bank, N.A. as Trustee for<br>CITIGROUP MORTGAGE LOAN TRUST SERIES<br>2006-AMC1;<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No.<br><br><br>**JUDGE KENDALL<br>MAGISTRATE JUDGE KEYS**<br><br><br><br><br><br>JURY TRIAL DEMAND |

## COMPLAINT

### INTRODUCTION

1.　　　Plaintiffs charge defendants with failure to honor valid rescission requests in violation of 15 U.S.C. § 1635.. Plaintiffs also charge defendants (except Washington Mutual Bank and the Citigroup Mortgage defendants) with violation of applicable state law.

### JURISDICTION AND VENUE

2.　　　This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under federal law.　This Court has supplemental jurisdiction over plaintiffs' claims under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

3.　　　Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

### PARTIES

4.　　　Plaintiffs are home owners who refinanced their mortgages in transactions with Ameriquest Mortgage Company.

5.　　　Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages.　In connection with those refinancing transactions, Ameriquest Mortgage Company took security interests in plaintiffs' homes.　Defendant AMC Mortgage Services Inc. serviced plaintiffs' mortgages.　Defendants ACC Capital Holdings and Ameriquest Mortgage Securities Inc. participated in the illegal scheme.　Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities Trust 2006-R1 and/or Ameriquest Securities Trust Series 2006-R1 is the owner/assignee of the Ferrara mortgage.　Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R11 and/or Ameriquest Mortgage Securities Inc., Asset

Backed Pass-Through Certificates, Series 2005-R11 is the owner/assignee of the McDonald
mortgage.  Defendant Deutsche Bank National Trust Company as Trustee for Ameriquest
Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R3 and/or
Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through Certificates, Series 2005-R3
is the owner/assignee of the Martindell mortgage.  Defendant Deutsche Bank National Trust
Company as Trustee for Ameriquest Mortgage Securities Inc., Asset Backed Pass-Through
Certificates, Series 2005-R2 and/or Ameriquest Mortgage Securities Inc., Asset Backed Pass-
Through Certificates, Series 2005-R2 is the owner/assignee of the Vigil mortgage.  Washington
Mutual Bank is the owner/assignee of the Haskins mortgage.  U.S. Bank, N.A. as Trustee for
Citigroup Mortgage Loan Trust 2006-AMC1 and/or Citigroup Mortgage Loan Trust 2006-
AMC1 was the owner/assignee of the Kruger mortgage.

## COUNT ONE -- TRUTH IN LENDING ACT

6.      Plaintiffs incorporate paragraphs one through five above.

7.      Ameriquest's disclosures to plaintiffs in connection with plaintiffs'
mortgage refinancing transactions did not comply with the requirements of the Truth in Lending
Act. More specifically, the disclosures were deficient in the following ways:

### Susan Ferrara

8.      The Notice of Right to Cancel forms given to plaintiff Ferrara at the
closing did not set forth the date that the rescission period expired, a violation of 12 C.F.R.
§ 226.23(b)(1)(v).  Ameriquest also misled plaintiff Ferrara as to the cost of credit by telling her
that the interest rate and closing costs would be lower than they actually turned out to be.

### John Kruger

9.      First, the Notice of Right to Cancel forms given to plaintiff Kruger at the
closing did not set forth the date that the rescission period expired, a violation of 12 C.F.R.
§ 226.23(b)(1)(v).  Second, by misleading plaintiff as to his closing costs and the cost of
refinancing into a fixed rate loan, Ameriquest violated 12 C.F.R. § 226.18.  Third, Ameriquest
paid creditors Waterfield Financial and Wachovia more than the amounts actually owed.  The

overpayments should have been classified as finance charges. As a consequence, the finance charge and APR were materially understated.

### Gene McDonald

10.　　　First, the Notice of Right to Cancel forms provided to plaintiff McDonald did not provide the date on which the rescission period ended, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, Ameriquest gave plaintiff McDonald a document (APPLICATION DISCLOSURE) which stated that he was being charged $350 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." Stephen Stewart said something very similar to plaintiff over the telephone. These statements contradicted plaintiff's right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiff tried to cancel the transaction, Ameriquest misrepresented plaintiff's rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Third, by misleading plaintiff McDonald as to the interest rate he would be charged and by promising plaintiff a real sweet deal at a lower interest rate in two years, Ameriquest violated 12 C.F.R. § 226.18.

### Miriam Haskins

11.　　　First, Ameriquest did not provide Haskins with a sufficient number of properly completed Notice of Right to Cancel forms at the closing. Second, the date for expiration of the rescission period stated on the form was incorrect because Ameriquest changed the deal after the closing (so that the supposed closing did not really mark the consummation of the transaction). According to the settlement statement, the amount to be paid to Haskins' prior mortgage lender was to be $127,193.72; according to the disbursement ledger the amount paid to the prior mortgage lender was only $122,091.57. Third, the amounts listed on the settlement statements to be paid to certain creditors (Washington Mutual and Citifinancial) included 3%

padding adjustments. These padding adjustments constituted hidden finance charges, so that the stated finance charge and APR were materially inaccurate.

### Donald and Wanda Martindell

12.  First, Ameriquest only provided the Martindells one Notice of Right to Cancel form and not two copies for each owner of the home as required. Second, Ameriquest told Mr. Martindell that he would have to pay the appraisal fee if he backed out of the deal; Ameriquest also gave Mr. Martindell two documents, both entitled APPLICATION DISCLOSURE, one of which stated that he was being charged $350 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation" and the other which stated that he was being charged $300 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." These statements contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Third, the Notice of Right to Cancel form given to Mr. Martindell lists Donald Martindell as the only borrower and creates the impression that only Mr. Martindell has the right to rescind the mortgage, whereas Mrs. Martindell also has that right. Fourth, by falsely assuring plaintiffs that the mortgage interest rate would be fixed for three years, and creating the impression that they would be able to refinance without any penalty before the rate went up, Ameriquest misled plaintiffs as to the cost of credit in violation of 12 C.F.R. § 226.18.

**Robert and Marlianna Vigil**

13.      First, the Notice of Right to Cancel forms delivered to the Vigils at the closing did not include the date that the rescission period expired.  Second, Ameriquest did not provide plaintiffs with the requisite number of Notice of Right to Cancel forms, providing a total of two rather than two each as required by Regulation Z.  Third, Ameriquest provided plaintiffs a document (**APPLICATION DISCLOSURE**) which said that they would owe $500 if they cancelled the deal, a statement which misrepresented the effects of rescission.  Fourth, Ameriquest gave plaintiffs a document at the closing (Uniform Residential Loan Application) which said that the interest rate on their loan would be 7.990% and didn't disclose that the rate could go as high as 13.990%.  Fifth, Ameriquest told plaintiffs that they would be able to refinance into a fixed rate loan before their mortgage interest rate adjusted upwards, thereby misleading plaintiffs as to the cost of credit.

14.      Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years.  See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

15.      Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent rescission notices to Ameriquest and to the defendants who owned and serviced their respective mortgages.  Defendants did not honor the rescission requests as required by federal law. Plaintiffs are entitled to rescission of their mortgage transactions plus other relief.

**COUNT TWO -- VIOLATION OF STATE LAW**

16.      Plaintiffs incorporate paragraphs one through fifteen above.

17.      In connection with trade or commerce, Ameriquest made false and misleading statements to plaintiffs intending to induce reliance.  Ameriquest baited plaintiffs into mortgage transactions by offering a relatively favorable set of terms and then switched to more

expensive terms.  More specifically:

### Susan Ferrara

18.      In or about December 2005, plaintiff Susan Ferrara spoke repeatedly on the telephone to an Ameriquest representative from the Ameriquest branch in West Chester, Pennsylvania.  The Ameriquest representative told plaintiff she would get a mortgage with an initial interest rate of 7.5% and that her closing costs would be around $5,000 or $6,000.  Instead, Ameriquest gave plaintiff a mortgage with an initial interest rate of 7.99% (which could later go as high as 13.99% depending on changes in the LIBOR rate) and assessed her settlement charges of $8,553.92.

### John Kruger

19.      In or about April 2006, plaintiff John Kruger decided to refinance the mortgage on his home in Lancaster, Pennsylvania.  Mr. Kruger spoke on the telephone to a representative of Ameriquest.  The representative offered an adjustable rate mortgage but assured Mr. Kruger that in a year Mr. Kruger would be able to refinance again into a fixed rate mortgage at no or minimal additional costs.  However, the mortgage actually provided to plaintiff included a substantial prepayment penalty for the first three years so that when plaintiff later contacted Ameriquest about locking into a fixed rate loan, he was told that if he tried to refinance he would incur a prepayment penalty of $4,400 or $4,500. The Ameriquest representative also promised closing costs of $4,000 or $5,000.  In fact, Ameriquest charged Mr. Kruger $10,431.90 in fees and points.

### Gene McDonald

20.      In or about October 2005, plaintiff Gene McDonald decided to refinance the mortgage on his home in Lexington, South Carolina and spoke repeatedly on the telephone to a representative of Ameriquest named Stephen A. Stewart.  Mr. Stewart promised Mr. McDonald a mortgage with an interest rate in the 6.25% to 6.50% range that would be fixed for 30 years. Mr. Stewart told Mr. McDonald not to worry about paying on debts that would be paid off pursuant to the mortgage refinancing.  Mr. Stewart also said that if Mr. McDonald canceled the

deal after the appraiser was called in, Mr. McDonald would be personally responsible for paying the appraisal fee.  The closing took place on October 20, 2005, at Mr. McDonald's place of work, in his boss's office, during Mr. McDonald's half hour lunch break.  Mr. McDonald had told Mr. Stewart that he only had a half hour lunch break and Mr. Stewart had assured him that would be plenty of time.  Ameriquest's closing agent came to the closing with a stack of papers and kept putting documents in front of plaintiff, telling him to sign and saying that he could read the documents later.  Mr. McDonald, feeling pressured, signed the documents without reading them. The terms of the deal had changed.  Instead of the promised fixed interest rate of between 6.25% and 6.5%, there was now an adjustable rate mortgage with an initial interest rate of 7.6%, which could increase to as much as 13.6%, depending on changes in the LIBOR rate.  Ameriquest charged Mr. McDonald $10,598.55 in fees and points in exchange for this loan.

### Miriam Haskins

21.      In or about January 2005, plaintiff Miriam Haskins spoke repeatedly on the telephone to an Ameriquest representative named Annette about refinancing the mortgage on her home.  Ms. Haskins was told that the initial interest rate on her loan would be 9%; it turned out to start out at 9.75%.

### Donald and Wanda Martindell

22.      Plaintiff Donald Martindell works as an administrator for the Moody Bible Institute in Chicago.  His wife, plaintiff Wanda Martindell, does clerical work for a mission in Linnwood, Illinois.  Mr. and Mrs. Martindell own a home in Highland, Indiana, where they live with their two daughters.

23.      In early 2005, the Martindells decided to refinance the mortgage on their home.  Mr. Martindell spoke repeatedly to a representative of Ameriquest named Brian Lawlor.  Mr. Lawlor promised the Martindells a mortgage with an interest rate in the 6% to 7% range that would be fixed for three years.  At the time, Mr. Martindell's credit score was in the 600s.  Mr. Lawlor told Mr. Martindell that his credit score would improve and that, as a consequence, plaintiffs would be able to refinance to a mortgage with a lower interest rate before the mortgage

became adjustable. Mr. Lawlor also told Mr. Martindell that Ameriquest's closing costs were competitive and would be rolled into the loan. Mr. Lawlor also told Mr. Martindell that there was an appraisal fee, which would be rolled into the loan that was non-refundable.

24. Ameriquest prepared an adjustable rate note with an initial interest rate of 6.5%, but which became adjustable after two years (rather than three as promised) and which eventually could go as high as 12.5%, depending on changes in the LIBOR rate. The mortgage also provided for a substantial prepayment penalty that did not expire for three years. In exchange for this loan, Ameriquest assessed plaintiffs fees and points of $9,833.27 (more than 6% of the $153,000 loan amount).

25. At the closing, Mr. Lawlor told plaintiffs that they had to go with a two year ARM because of plaintiffs' credit score and the loan to value ratio. Mr. Lawlor told plaintiffs not to worry because they would be able to refinance within the two years. Mr. Lawlor did not mention that there was a three year prepayment penalty and plaintiffs did not notice the provision when they signed the papers.

26. In 2007, when plaintiffs were seeking to refinance their mortgage, they became aware of the three year prepayment penalty. Mr. Martindell called to complain, was told that he did have a three year prepayment penalty and was given the opportunity to complain in writing. Mr. Martindell sent a letter to Ameriquest which stated in part:

> Please consider this document to serve as a formal request/appeal for AMC to waive this loan's prepayment penalty.
>
> In January 2005, during negotiations of this loan with Ameriquest (Merrrillville, IN Office) Agent Brian Lawlor, a 3 year ARM was the only type of mortgage about which there was conversation.
>
> Upon arrival at closing, he informed us that he had switched it to a 2 Year ARM. We were verbally assured that we should not be concerned, because we could easily refinance to a fixed mortgage after 2 years. There was no explanation of a 3 year requirement to avoid a hefty penalty.
>
> Our rate went from 6.5% to 8.5% in April, so we began looking for refinancing. We were shocked to find a $5047.11 prepayment penalty included in the payoff

amount we requested.

While we are not financial wizards, I am confident that we would have balked at the closing table had we been informed that this was **2 Year ARM .... BUT** you have to keep it for **3 years.**

We believe that we were deceived, or at the very least, misled into this situation by Ameriquest.

Therefore, we respectfully request that AMC rescind the Prepayment Penalty on our loan at this time so that we may pursue refinancing.

The Martindells did not receive a response.

27.     Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under applicable state law.

28.     Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

29.     The other defendants (except Washington Mutual Bank and the Citigroup Mortgage defendants) knowingly aided and abetted this illegal behavior by Ameriquest, and knowingly participated in an illegal conspiracy and joint venture with Ameriquest, and are therefore also liable to plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a.     canceling the appropriate defendants' security interests in plaintiffs' homes and ordering those defendants to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. § 226.23(d)(2);

b.     awarding appropriate statutory damages against Ameriquest;

c.     awarding plaintiffs costs, penalties, and attorneys fees;

d.     awarding plaintiffs actual and punitive damages (except against Washington Mutual Bank and the U.S. Bank, N.A. defendants);

e.     granting such other relief as the Court deems just and proper.

Respectfully submitted by:


/s/ Anthony Valach
Counsel for the Plaintiffs

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL  60606
Phone:  (312) 960-1802
Fax:  (312) 960-1936
lawofficedh@yahoo.com