**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | Centralized before The Honorable Marvin E. Aspen |
| THIS DOCUMENT RELATES TO: | |
| *Bronwen Elliot-Labin, et al v. Ameriquest Mortgage Company, et al.*; Case No. 07-cv-6191 | |

## DEFENDANT AMERIQUEST MORTGAGE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT

Defendant AMERIQUEST MORTGAGE COMPANY ("Defendant"), by and through its attorneys, answers the Amended Complaint of Plaintiffs BRONWEN ELLIOT-LABIN, GWEN FAUST, EILEEN RUSSELL, CLARENCE HOLLAND, RICHARD JANEWAY, LINDA MOSS, MARCIA NOWIK, PAUL and WANDA NEWBOLT ("Plaintiffs") as follows.

## AMENDED COMPLAINT

## INTRODUCTION

1.      Plaintiffs charge defendants with failure to honor valid rescission requests in violation of 15 U.S.C. § 1635. Plaintiffs also charge defendants with violation of applicable state law.

**ANSWER:    Defendant admits that Plaintiff has filed a lawsuit against it.  Defendant denies all remaining allegations in Paragraph 1.  Defendant specifically denies that it violated the Truth in Lending Act and 15 U.S.C. § 1635 or any other law.**

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under federal law. This Court has supplemental jurisdiction over plaintiffs' claims under state law pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. § 1367.

**ANSWER:      Defendant does not contest subject matter jurisdiction.  Defendant denies the remaining allegations in the paragraph.**

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because the defendants do business in this district. Also, the Judicial Panel on Multi-District Litigation has issued an order centralizing predatory lending litigation against Ameriquest in this district before Judge Aspen.

**ANSWER:      Defendant denies that venue is proper in the Northern District of Illinois pursuant to the Multi-District Litigation panel's Transfer Order based on Federal and State Constitutional grounds, including but not limited to Due Process and Equal Protection under the law.  Defendant denies any remaining allegations in the paragraph.**

## PARTIES

4.      Plaintiffs are home owners who refinanced their mortgages in transactions with Ameriquest Mortgage Company.

**ANSWER:      The documents speak for themselves; therefore, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiffs.**

5.      Defendant Ameriquest Mortgage Company originated plaintiffs' mortgages. In connection with those refinancing transactions, Ameriquest Mortgage Company took security interests in plaintiffs' homes. Ameriquest Mortgage Company also did business in this District.

**ANSWER:      Defendant objects to the term "District" as vague.  Defendant admits that Ameriquest Mortgage Company that at the time the Plaintiffs entered into their loans, Defendant Ameriquest Mortgage Company was in the business of originating loans secured by mortgages.  Otherwise, Defendant is without**

**knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations. Defendant does not object to service.**

6.     Defendant AMC Mortgage Services, Inc. at one point serviced plaintiffs'

mortgages that were originated by Ameriquest and did business in this District.

**ANSWER:**     **Defendant objects to the term "District" as vague.  Defendant admits that AMC Mortgage Services, Inc. serviced certain of the loans originated by Ameriquest Mortgage Company.  Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

7.     Defendant Ameriquest Mortgage Securities, Inc. held legal or beneficial title to

mortgage loans originated by Ameriquest at issue in this lawsuit.

**ANSWER:**     **Defendant admits that "Ameriquest Mortgage Securities, Inc. held legal or beneficial title to mortgage loans originated by Ameriquest" with respect to Plaintiffs Holland and Janeway.  Defendant denies the remaining allegations of Paragraph 7.**

8.     Defendant ACC Capital Holdings is the parent company for Ameriquest

Mortgage Company and AMC Mortgage Services, Inc.

**ANSWER:**     **Defendant objects to the term "parent company" as vague.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the intended characterization of the term "parent company."**

9.     Defendant Deutsche Bank National Trust Company is the trustee of Ameriquest

Mortgage Securities Inc. for the various asset backed pass-through certificates which owns or

owns plaintiffs' loans.

**ANSWER:**     **Defendant is informed and believes that Defendant Deutsche Bank National Trust Company is trustee for Ameriquest Mortgage Securities Inc. Asset Backed Pass Through Certificates Series 2005-R1, which includes the Janeway loan, but that Defendant Deutsche Bank National Trust Company no longer holds any interest, right or title in the Holland loan and that Defendant Deutsche Bank National Trust Company does not hold any interest, right or title in the loans of Plaintiffs Elliot-Labin, Faust, Russell, Moss, Nowik or Newbolt.  Defendant denies any remaining allegations of Paragraph 9.**

10.    Defendant America's Servicing Company currently is the servicer for the Bronwen Elliot-Labin, Gwen Faust and Eileen Russell loans.

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

11.    Bear Steams/EMC is the current owner for the Bronwen Elliot-Labin, Gwen Faust and Eileen Russell loans.

**ANSWER:    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

12.    Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc. Asset Backed Pass Thru Certificates Series 2005-R5 and/or Ameriquest Mortgage Securities Inc. Asset Backed Pass Thru Certificates Series 2005-R5 is the owner/investor for the Holland loan.

**ANSWER:    Defendant is informed and believes that Defendant Deutsche Bank National Trust Company no longer holds any interest, right or title in the Holland loan.  Defendant denies any remaining allegations of Paragraph 12.**

13.    Defendant Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities Inc. Asset Backed Pass Through Certificates Series 2005-R1 and/or Ameriquest Mortgage Securities Inc. Asset Backed Pass Through Certificates Series 2005-R1 is the owner/investor for the Janeway loan.

**ANSWER:    Defendant is informed and believes that Defendant Deutsche Bank National Trust Company is trustee for Ameriquest Mortgage Securities Inc. Asset Backed Pass Through Certificates Series 2005-R1, which includes the Janeway loan.  Defendant denies any remaining allegations of Paragraph 13.**

14.    Defendant Washington Mutual is the current owner/investor for the Linda Moss, Marcia Nowik, and Paul & Wanda Newbolt loans.

**ANSWER:**     **Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

15.     Plaintiffs are informed and believe that, at all times herein mentioned, each Defendant (except America's Servicing Company, Bear Steams/EMC and Washington Mutual Bank) was the agent, co-conspirator, joint tortfeasor, joint venturer, and/or alter ego of each other defendant. In doing the things alleged herein, each defendant was acting within the course and scope of said agency, conspiracy, contract, and/or joint venture with the direction, advance knowledge, authorization, acquiescence, and/or subsequent ratification of each and every remaining defendant. Each defendant was put in a position and so enabled by the remaining defendant to do the things hereinafter alleged.

Each defendant had the knowledge of and agreed to the objective and course of action hereinafter alleged, and each defendant conspired with and aided and abetted each other defendant in achieving that objective and pursuing that course of action.

**ANSWER:**     **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

16.     Whenever reference is made in this complaint to any act, deed or transaction of any defendant corporation, or any other defendant business entity, such allegations shall be deemed to mean that the officers, directors, agents or employees of said defendant authorized, acted and did such acts in behalf of said defendant while actively engaged in the management, direction or control o£ its affairs and while acting within the course and scope of their employment.

**ANSWER:**     **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

17.     Whenever reference is made in this complaint to any act of any defendant, such allegation shall be deemed to mean the act of each defendant, acting individually, jointly and severally.

**ANSWER:**    **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

18.    At all times relevant herein, defendants, and each of them, were the agents of each of the other defendants and in doing the things alleged herein were acting within the course and scope of said agency.

**ANSWER:**    **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

**COUNT ONE**

**TRUTH IN LENDING ACT**

19.    Plaintiffs incorporate paragraphs one through eighteen above.

**ANSWER:**    **Defendant restates its answers to Paragraphs 1-18 in answer to this paragraph.**

20.    Ameriquest's disclosures to plaintiffs in connection with plaintiffs' mortgage refinancing transactions did not comply with the requirements of the Truth in Lending Act. More specifically, the disclosures were deficient in the following ways:

**ANSWER:**    **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

**Bronwen Elliot-Labin**

21.    First, the Notice of Right to Cancel form made it appear that only Mr. Labin had the right to cancel the mortgage, whereas plaintiff Bronwen Elliot-Labin also had that right. Second, Ameriquest did not provide the requisite number of copies of the completed Notice of Right to Cancel form. Third, by misleading plaintiff as to her interest rate and house payments, Ameriquest violated 12 C.F.R. § 226.18.

**ANSWER:**    **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form**

**a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

**Gwen Faust and Eileen Russell**

22.     First, Ameriquest falsely assured plaintiffs Gwen Faust and Eileen Russell that their interest rate could only increase once, thereby misleading them as to the nature of the variable interest rate on their loan in violation of 12 C.F.R. § 226.18. Second, Ameriquest gave Faust and Russell a document entitled **PRE-APPLICATION DISCLOSURE** which stated that they were being charged $200 for an appraisal and that this fee was non-refundable to the extent that appraisal costs were actually incurred. This statement contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv). Third, the settlement statement signed at closing said that Faust and Russell would receive $99,671.04, but in fact plaintiffs only received $79,199.16. The Notice of Right to Cancel forms given to plaintiffs at the closing said their rescission period expired on April 14, 2005. This date was based on a consummation date of April 11, 2005, and was incorrect. 'Because Ameriquest changed the terms of the deal after the closing -- by not paying plaintiffs as much as promised in the settlement statement -- the transaction was not consummated on April 11, 2005. Therefore, the rescission period did not expire on April 14, 2005 and it was a violation of 12 C.F.R. § 226.23(b)(1)(v) for Ameriquest to say that it did. Fourth, Ameriquest paid a prior lender, Wachovia, more than the amount actually owed. This overpayment should have been classified as a finance charge. As a result, the finance charge and APR were materially understated.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If**

**any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Clarence Holland

23.     Plaintiff Clarence Holland was given a document entitled **APPLICATION DISCLOSURE**, which indicated that he would owe $450 if he backed out of the deal after the Lender ordered the appraisal/property valuation. This statement was a misrepresentation which violated 12 C.F.R. § 226.23(b)(1)(iv). Also, Ameriquest misled plaintiff Holland as whether he would be able to refinance into a lower interest fixed rate loan before his interest rate increased, thereby violating 12 C.F.R. § 226.18.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Richard Janeway

24.     First, the Notice of Right to Cancel form provided to plaintiff Janeway did not provide the date on which the rescission period ended, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, Ameriquest gave plaintiff Janeway two documents, both entitled **APPLICATION DISCLOSURE**, one of which stated that he was being charged $325 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation" and the other of which stated that he was being charged $500 for an appraisal/property valuation and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." These statements contradicted plaintiffs right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the

words "any money or property" would include an appraisal fee. By representing the appraisal fee

was nonrefundable if plaintiff tried to cancel the transaction, Ameriquest misrepresented

plaintiffs rescission rights, thereby making the rescission notice defective under 12 C.F.R.

§ 226.23(b)(1)(iv). Third, plaintiff Janeway received only one Notice of Right to Cancel form,

rather than the two forms required by 12 C.F.R. § 226.23(b)(1). Fourth, Ameriquest misled

plaintiff as to the interest rate he would be charged, thereby violating 12 C.F.R. § 226.18.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Linda Moss

25.     First, Ameriquest did not give plaintiff Moss Notice of Right to Cancel forms.

Second, Ameriquest paid a creditor, Litton Loan, more than the amount actually owed to the

prior lender, as a result of Ameriquest's practice of including a 3% "padding" adjustment in

payoffs to certain lenders. The overpayment should have been included in the finance charge,

rather than in the amount financed. As a result of this misstatement, the finance charge and APR

on the mortgage were materially understated. Third, plaintiff Moss was given two documents,

both entitled **APPLICATION DISCLOSURE**, one of which indicated that she would owe $300

if she backed out of the deal after the Lender ordered the appraisal/property valuation, while the

other indicated that she would owe $207 if she backed out of the deal after the Lender ordered

the appraisal/property valuation. Both statements were misrepresentations which violated 12

C.F.R. § 226.23(b)(1)(iv). Fourth, Ameriquest misled plaintiff Moss as to whether her interest

rate was likely to increase, a misrepresentation that violated 12 C.F.R. § 226.18.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form**

**a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Marcia Nowik

26.     First, the Notice of Right to Cancel forms provided to plaintiff Nowik at the closing did not include the date the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, Ameriquest paid a creditor, Centex Home Equity, more than the amount actually owed to the prior lender, as a result of Ameriquest's practice of including a 3% "padding" adjustment in payoffs to certain lenders. The overpayment should have been included in the finance charge, rather than the amount financed. As a result of this misstatement, the finance charge and APR on the mortgage were materially understated. Third, plaintiff Nowik was given a document, entitled **APPLICATION DISCLOSURE**, which indicated that she would owe $200 if she backed out of the deal after the Lender ordered the appraisal/property valuation. This statement was a misrepresentation which violated 12 C.F.R. § 226.23(b)(1)(iv). Fourth, Ameriquest misled plaintiff Nowik as to whether her interest rate could increase, a misrepresentation that violated 12 C.F.R. § 226.18.

**<u>ANSWER</u>:     The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Paul and Wanda Newbolt

27.     First, the Notice of Right to Cancel forms delivered to the Newbolts at the closing left blank the date on which the rescission period expired, a violation of 12 C.F.R. § 226.23(b)(1)(v). Second, by falsely assuring the Newbolts that they were getting a fixed rate mortgage, Ameriquest misled plaintiffs as to the existence of a variable interest rate on their loan in violation of 12 C.F.R. § 226.18. Third, by falsely assuring the Newbolts that they would be able to lower their interest rate in two years, Ameriquest misled plaintiffs as to the cost of credit

in violation of 12 C.F.R. § 226.18. Fourth, Ameriquest gave the Newbolts a document entitled **APPLICATION DISCLOSURE** which stated that they were being charged $200 for an appraisal and that this "deposit is refundable only if the loan is denied or withdrawn prior to the Lender ordering the appraisal/property valuation." This statement contradicted plaintiffs' right to rescind the transaction and get back "any money or property that has been given to anyone in connection with the transaction" 12 C.F.R. § 226.23(d)(2). The Federal Reserve Board's commentary of paragraph 23(d)(2) explains that the words "any money or property" would include an appraisal fee. By representing the appraisal fee was nonrefundable if plaintiffs tried to cancel the transaction, Ameriquest misrepresented plaintiffs' rescission rights, thereby making the rescission notice defective under 12 C.F.R. § 226.23(b)(1)(iv).

**ANSWER:** **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

28.      Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. § 226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

**ANSWER:** **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

29.      Ameriquest's rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent rescission notices to Ameriquest and to the defendants who owned and serviced their respective mortgages. Defendants did not honor the rescission requests as required by federal law. Plaintiffs are entitled to rescission of their mortgage transactions plus other relief.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiffs.**

## COUNT TWO

### FALSE ADVERTISING / UNFAIR AND DECEPTIVE ACTS AND PRACTICES

30.     Plaintiffs incorporate paragraphs one through twenty-nine above.

**ANSWER:**     **Defendant restates its answers to Paragraphs 1-29 in answer to this paragraph.**

31.     In connection with trade or commerce, Ameriquest engaged in false advertising and engaged in unfair and deceptive acts and practices in violation of State laws (including common law doctrines) which prohibit bait and switch sales practices. More specifically, as detailed below, Ameriquest baited plaintiffs into mortgage transactions by offering relatively favorable terms and then switched to more expensive terms. This misconduct has caused damage to plaintiffs. More specifically:

**ANSWER:**     **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

### Bronwen Eliot-Labin

32.     In or about April 2005, a representative of Ameriquest told plaintiff Bronwen Elliot-Labin of Chico, California, that she would get a mortgage with an interest rate between 5% and 6%, and that she should stop paying her other creditors. Instead of the promised loan, however, plaintiff and her husband received a mortgage with an initial interest rate of 6.250%, which could increase to 12.250%, depending on changes in the LIBOR rate, for which they were assessed unexpectedly high settlement charges of $14,992.15.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form**

**a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

**Gwen Faust and Eileen Russell**

33.     Plaintiff Gwen Faust is the director for organizational change at Orange Regional Medical Center. Plaintiff Eileen Russell is the assistant deputy superintendent of programs at Great Meadow Correctional Facility. They own a home in South Salem, New York. In 2005, plaintiffs decided to refinance the mortgage on their home. They contacted Ameriquest and spoke repeatedly with a representative of Ameriquest named Janel Adcock. Plaintiffs said that they were only interested in a fixed rate mortgage with no points. However, after discussions with Ms. Adcock, plaintiffs agreed to a mortgage that could increase on one occasion, after five years, to 5.75% and could not increase thereafter. Plaintiffs were told to expect closing costs of about $6,000. Ameriquest prepared papers for a loan of $335,000 with an initial interest rate of 5.875% but which, after five years, could increase every six months to as much as 11.875% depending on changes in the LIBOR rate. Ameriquest assessed plaintiffs $17,992.86 in fees and points in exchange for this loan. The closing took place on April 11, 2005 at the Ameriquest office in Tarrytown, New York. Present were plaintiffs and a closing agent for Ameriquest. Plaintiffs asked why the closing costs were so high. Janel Adcock was called into the room and said she was surprised too. Plaintiffs raised a question about how often the interest rate on the loan could increase. Ms. Adcock showed plaintiffs a TILA schedule of payments which appeared to show there would be only one increase in the monthly payments. Ms. Adcock told plaintiffs not to worry about apparently contrary language in the loan papers. Plaintiffs believed Janel Adcock's assurances and signed the loan papers.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

**Clarence Holland**

34.     In or about April 2005, plaintiff Clarence Holland spoke on the telephone to an Ameriquest representative and was assured that he would be able to refinance into a lower interest fixed rate mortgage before his mortgage interest rate increased two years later. However, Ameriquest provided plaintiff with a mortgage with a substantial prepayment penalty applicable if the mortgage was refinanced within three years. In 2007, that prepayment penalty prevented plaintiff from consummating a refinancing transaction.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

**Richard Janeway**

35.     Plaintiff Richard Janeway is a sales representative in the automotive collision industry, selling equipment used to repair cars that have been involved in accidents. Mr. Janeway owns a home in New Tazewell, Tennessee. In late 2004, Mr. Janeway decided to refinance the mortgage on his home. He spoke repeatedly on the telephone to a representative of Ameriquest. The Ameriquest representative promised Mr. Janeway a mortgage loan with an interest rate that would be fixed for three years at 6.25% and then would adjust slightly. Mr. Janeway was also told that the loan's prepayment penalty would expire after two years. Ameriquest prepared documents for a loan of $102,850.00, with a three year prepayment penalty and an initial interest rate of 6.750% which was fixed for two years and could eventually go as high as 12.750%, depending on changes in LIBOR. Ameriquest assessed plaintiff $6,982.43 in fees and points in exchange for this loan. The closing took place in December 2004 at the office of a title company in West Knoxville, Tennessee and lasted about twenty minutes. Plaintiff just glanced at the loan papers and did not notice the discrepancies between what he had been promised and the actual loan terms.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Linda Moss

36.     Plaintiff Linda Moss owns a home in Zionsville, Indiana, where she lives with her two children. Ms. Moss works for a bank in Indianapolis. In 2005, plaintiff decided to refinance the mortgage on her home in order to consolidate debts she had incurred trying to make ends meet following her divorce. In or about August 2005, Ms. Moss spoke repeatedly on the telephone to an Ameriquest representative named Robin Fox. Ms. Fox promised plaintiff a mortgage and told her that the interest rate on her mortgage loan would be fixed for three years and after that it could up or down depending on what the market is. Ms. Fox said that, based on current market conditions she thought that after three years plaintiffs payment would probably go down. However, Ameriquest gave Ms. Moss a mortgage loan with an initial interest rate of 8.250%, which could go up to as high as 14.250%, depending on changes on the LIBOR rate but under no circumstances could go below the initial rate.

**ANSWER:**     **The documents speak for themselves; therefore, no answer is required.  To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Marcia Nowik

37.     In or about November 2004, plaintiff Marcia Nowik spoke repeatedly on the telephone to an Ameriquest representative named Brian Applegate about refinancing the mortgage on her home in Yellow Springs, Ohio. Mr. Applegate promised plaintiff a fixed rate mortgage with an interest rate of 6.1 %. Instead, however, Ameriquest provided plaintiff with an

adjustable rate loan which could go up to as high as 12.1 %, depending on changes on the LIBOR rate. Ameriquest charged plaintiff $8,358.67 in fees and points for this loan.

**ANSWER:**    **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

### Paul and Wanda Newbolt

38.    Plaintiff Paul Newbolt is a courier for DHL. His wife, plaintiff Wanda Newbolt, works as a parts tester. They own a home in Indianapolis, Indiana, where they live with their daughter. In 2004, the Newbolts decided to refinance the mortgage on their home. Mr. Newbolt contacted Ameriquest and spoke to a representative who promised a mortgage with an interest rate between 9% and 10%. The Ameriquest representative gave Mr. Newbolt the impression that the interest rate was fixed. Mr. Newbolt was told that he would be able to get a lower interest rate in two years if he made timely mortgage payments. Ameriquest prepared papers for a loan of $128,000 with an initial interest rate of 9.3% but which could increase to as much as 15.3% depending on changes in the LIBOR rate. There was no cash out for plaintiffs. Ameriquest assessed plaintiffs $5,873.37 in fees and points in exchange for this loan. The closing took place on January 20, 2005 at around 1:00 p.m. at an Ameriquest office in Indianapolis. The Ameriquest representative who had spoken to Mr. Newbolt on the telephone shook hands with plaintiffs, congratulated them on their mortgage and introduced to a closer. The closer had plaintiffs sign the loan papers, which they did without reading them. During the closing, the closer remarked to the Newbolts that their loan was backed by LIBOR, which he (the closer) said was like the European Stock Exchange. The closer told that the Newbolts that whenever he refinanced his own mortgage he would go with a LIBOR loan. The closer also reiterated that the Newbolts would be able to get a lower interest rate in two years if they stayed current on their mortgage payments. Around September 2006, the Newbolts began receiving letters from other

mortgage companies, telling them that their mortgage interest rate would adjust upwards. At first, Mr. Newbolt did not believe the letters, figuring he was protected because he had a fixed LIBOR loan. Eventually, however, he looked at his mortgage papers and discovered his loan was adjustable. Mr. Newbolt contacted Ameriquest to see about refinancing into a fixed rate mortgage. He was told that he would not be able to refinance because his house only appraised for $120,000, which is less than the Newbolts owe on their mortgage.

**ANSWER:**   **The documents speak for themselves; therefore, no answer is required. To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiff. Otherwise, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and on that basis denies such allegations.**

39.    Ameriquest's false and misleading statements to plaintiffs violated plaintiffs' rights under applicable state law.

**ANSWER:**   **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

40.    Ameriquest's false and misleading statements deceived plaintiffs and proximately caused them injury.

**ANSWER:**   **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

41.    The other defendants (except America's Servicing Company, Bear Steams/EMC and Washington Mutual Bank) are jointly responsible because Ameriquest acted as their agent and/or co-conspirator and because the other defendants knowingly aided, abetted, participated in and/or assisted in the pattern and practice of misconduct. The other defendants are therefore jointly and severally liable to plaintiffs.

**ANSWER:**   **To the extent this paragraph states conclusions of law, no answer is required. If any answer is required, Defendant denies any liability to Plaintiffs.**

## COUNT THREE

## NEGLIGENCE

42.    Plaintiffs incorporate paragraphs one through forty-one above.

**ANSWER:    Defendant restates its answers to Paragraphs 1-41 in answer to this paragraph.**

43.    Because of a lack of due care, Ameriquest made false and misleading representations to plaintiffs upon which plaintiffs justifiably and detrimentally relied. More specifically, Ameriquest baited plaintiffs into mortgage transactions by offering relatively favorable terms and then switched to more expensive terms. This misconduct has caused damage to plaintiffs. The other defendants (except America's Servicing Company, Bear Steams/EMC and Washington Mutual Bank) are jointly responsible because Ameriquest was acting as their agent and/or co-venturer.

**ANSWER:     To the extent this paragraph states conclusions of law, no answer is required.  If any answer is required, Defendant denies any liability to Plaintiffs.**

## AFFIRMATIVE DEFENSES

1.    Plaintiffs' purported causes of action fail to state a claims upon which relief may be granted.

2.    Plaintiffs' claims are barred by the applicable statute of limitations.

3.    Plaintiffs' claims are barred in whole or in part under the doctrine of estoppel, laches and/or waiver.

4.    Plaintiffs' claims are barred in whole or in part, on the ground that if any law was violated in any manner whatsoever, such violation, if any, was a direct and proximate result of the intervening and superseding actions on the part of other parties and/or persons or entities and not Defendant, and any such intervening or superseding action of said parties and/or persons or entities bars Plaintiffs' recovery.

5.      Defendant alleges that at all times relevant to this action Defendant acted within the course and scope of reasonable commercial standards and legitimate business transactions.

6.      Plaintiffs' claims are barred in whole or in part, because Plaintiffs would be unjustly enriched if allowed to recover on the Complaint.

7.      Defendant alleges that no officer, director, or managing agent of Defendant ratified the conduct alleged by Plaintiffs.

8.      Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel.

9.      Plaintiffs' claims are barred in whole or in part, because Plaintiffs misrepresented their credit, income or other information association with obtaining the loan.

10.     Plaintiffs' claims are barred or limited because pursuant to 15 U.S.C. § 1640(c) the violations alleged were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

11.     Plaintiffs are not entitled to rescind the mortgage loan under the Truth in Lending Act, or to obtain any statutory damages because all required disclosures and notices were accurately and timely made, and even if the disclosures were inaccurate, the inaccuracies are within the applicable tolerances.

12.     Plaintiffs are not entitled to statutory damages, or actual damages for failure to rescind, because no alleged disclosure error is apparent on the face of the disclosure documents.

13.     If it should be deemed that Plaintiffs are entitled to rescission, any obligation on the part of the holder of the loan to rescind the mortgage loan at issue in this lawsuit and release the lien on the subject property must be conditioned upon Plaintiffs' reimbursement or other return to the holder of the loan of all funds disbursed on Plaintiffs' behalf in connection with the subject mortgage loan, less any finance charges, pursuant to 15 U.S.C. § 1605(b) and/or other rules of law or equity.  Any obligation on the part of the holder of the loan to rescind and to release any lien is conditioned upon Plaintiffs reimbursing or otherwise returning all funds

disbursed on their behalf to the holder of the loan in connection with the subject loan, less any finance charges.

14.     Defendant alleges that it presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses. Defendant reserves its right to file an amended answer asserting additional defenses, and/or to file a counter or cross-complaint in the event that discovery indicates that either is appropriate.

WHEREFORE, Defendant requests that this Court enter judgment in its favor and against Plaintiffs, award Defendant its costs, and provide such further and additional relief as it deems just and appropriate.

Respectfully submitted,

DATED:  August 26, 2008                    By: /s/ Bernard E. LeSage
                                                *Attorneys for Ameriquest Mortgage*
                                                *Company*

Bernard E. LeSage, Esq.
Sarah K. Andrus, Esq.
BUCHALTER NEMER, a P.C.
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400

## <u>CERTIFICATE OF SERVICE</u>

I, Bernard E. LeSage, hereby certify that on this 26th day of August, 2008 a true and correct copy of the foregoing document was filed electronically.  Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.


By:     /s/  Bernard E. LeSage